IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TONYA SIMERLY,

           Plaintiff,

v.                                  CIVIL ACTION NO.   2:20-cv-00119

C.L. OSBORNE, et al.,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants C.L. Osborne ("Osborne") and the City of Smithers, West Virginia's (the "City") (collectively, "Defendants") Motion to Dismiss. (ECF No. 9.) For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

I.    BACKGROUND

This action arises out of law enforcement effectuating an arrest in the city of Smithers, West Virginia. Plaintiff filed the original complaint in the Circuit Court of Fayette County, West Virginia, on January 8, 2020. (*See* ECF No. 1.) The original complaint alleged violations of Plaintiff's rights under the Constitution of the State of West Virginia, the Constitution of the United States, and asserted a common-law claim of negligence. (*See* ECF No. 1-5.) On February 11, 2020, Defendants C.L. Osborne and the City of Smithers filed their Notice of Removal and removed this case pursuant to 28 U.S.C. §§ 1331, 1367(a), and 1441. (ECF No. 1 at

1

3.) Thereafter, on February 19, 2020, Plaintiff filed an Amended Complaint pursuant to Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure.[1] (ECF No. 5.)

The Amended Complaint alleges that on November 17, 2019, Plaintiff was a passenger in a car with two other individuals: her boyfriend and Allyson Westfall.[2] (*Id.* at ¶ 7). Upon arriving at the Plaintiff's apartment, Defendant Osborne, a police officer for the City of Smithers, stopped behind the car, exited his police vehicle, and stated that Plaintiff had a capias for her arrest for not appearing in the Fayette County Magistrate Court. (*Id.* at ¶¶ 7–9.) Plaintiff alleges that her friend, Ms. Westfall, then "interrupted the altercation" and asked Defendant Osborne why he was arresting Plaintiff. (*Id.* at ¶ 10.) Plaintiff asserts that Defendant Osborne immediately "slammed [Ms. Westfall] to the ground," resulting in her losing consciousness and sustaining injuries to her face, head, and body. (*Id.*) Plaintiff further alleges that Defendant Osborne then picked her up and slammed her to the ground as well, resulting in a loss of consciousness and injuries to her head, arm, and stomach. (*Id.* at ¶ 11.) Plaintiff alleges that her boyfriend, Jason Terrell, then called emergency dispatch to report the situation. (*Id.* at ¶ 12.) Officer Oden, an officer not named in the instant lawsuit, responded to the scene and, along with Osborne, placed Plaintiff under arrest when she regained consciousness. (*Id.* at ¶¶ 13–14.) Plaintiff alleges that she required medical treatment at Montgomery General Hospital for her injuries, including "extreme bruising" to her torso, and injuries to her arm and head. (*Id.* at ¶ 17.)

---

[1] Plaintiff's Amended Complaint was also the subject of her Motion to Remand, (ECF No. 6), which this Court denied by order entered May 28, 2020. (ECF No. 18.) Plaintiff's Amended Complaint notably removed every federal claim asserted in the original complaint.

[2] The Court notes that Allyson Westfall has filed her own action based on these allegations, which is also before the Court. The companion case is *Westfall v. Osborne, et al.*, Civil Action Number 2:20-cv-00118.

Plaintiff's Amended Complaint asserts three causes of action. Count I asserts a constitutional tort under Article III, Sections 6 and 10 of the West Virginia Constitution.[3] Specifically, Plaintiff alleges that Osborne used excessive and wrongful force against the Plaintiff while executing her arrest. (*Id.* at ¶ 25.) Plaintiff also alleges that the City violated Plaintiff's constitutional rights by "failing to intercede and preventing" Osborne from "using excessive and wrongful force," and that in its "supervisory capacity failed to intercede[.]" (*Id.* at ¶¶ 28–29.)

Count II asserts a claim of negligence against the City "and their agents and employees." (*Id.* at ¶ 34.) Count II essentially asserts a claim for negligent hiring, training, supervising, and retaining for the City's alleged breach of its duty of care because of Osborne's use of excessive force. (*Id.* at ¶¶ 35–36.) Plaintiff further alleges that the City breached its duty to her "by failing to properly train, educate, and instruct" Osborne on the appropriate use of force and "properly communicating with members of the public." (*Id.* at ¶ 37.)

Finally, Count III alleges a claim for the negligent infliction of emotional distress ("NIED"). Count III is alleged only against Defendant Osborne. Specifically, Plaintiff asserts that "[u]nprovoked and unjustified attacks of civilians by law enforcement officers are intolerable in a civilized society." (*Id.* at ¶ 43.) Therefore, Plaintiff asserts that Osborne's "unprovoked and unjustified attack . . . was atrocious, intolerable, and so extreme and outrageous that it exceeded the bounds of decency." (*Id.*)

Defendants filed the instant motion to dismiss on March 4, 2020. (ECF No. 8.) Subsequently, Plaintiff filed her response in opposition on March 18. (ECF No. 11.) Defendants

---

[3] Plaintiff also alleges violations under the "Fourth and Fourteenth Amendment [*sic*] to the Constitution of the State of West Virginia." (ECF No. 5 at ¶ 23.) While the Constitution of the State of West Virginia has numerous amendments, none are listed as the "Fourth" or "Fourteenth" Amendment.

3

then timely filed their reply on March 24. (ECF No. 12.) With the briefing on this motion complete, the motion is therefore ripe for adjudication.

## II. LEGAL STANDARD

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests"). A complaint must plead sufficient factual content "to state a claim to relief that is plausible on its face" to withstand a motion made pursuant to Federal Rule of Civil Procedure 12(b)(6). *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

When evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Court next assumes the veracity of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial

experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

### III. DISCUSSION

Defendants argue for the dismissal of the complaint in its entirety. First, Defendants argue that Plaintiff fails to state a claim under either Article III, § 6 or § 10 of the West Virginia Constitution. Defendants then argue that Plaintiff's negligence claim fails as a matter of law because it has been insufficiently pled; the City is entitled to statutory immunity; and the City cannot be held vicariously liable for intentional actions by employees. Finally, Defendants argue that Plaintiff has failed to plead sufficient facts to support her NIED claim. The Court takes up these arguments in order.

A. The State Constitutional Tort Claims

1. Article III, Section 6

Defendants assert first that the state of West Virginia does not recognize a claim for money damages for violation of Article III, § 6 of the West Virginia Constitution. (ECF No. 9 at 5.) Defendants argue that, under this Court's precedent, without an independent statute authorizing a private cause of action for damages, Plaintiff's claims for damages must fail. (*Id.* at 6 (citing *Nutter v. Mellinger*, Civ. Action No. 2:19-cv-00787, 2020 WL 401790 (S.D. W. Va. Jan. 23, 2020).) Plaintiff argues, however, that the Supreme Court of Appeals has not yet addressed the question of whether Article III of the West Virginia Constitution gives rise to a private cause of

action and that this Court's precedent indicates that the Supreme Court of Appeals "probably *would*" find a private cause of action to exist. (ECF No. 11 at 5 (citing *Spry v. West Virginia*, Civ. Action No. 2:16-cv-01785, 2017 WL 440733 (S.D. W. Va. Feb. 1, 2017) (emphasis in brief).)

To begin, Article III, § 6 parallels the Fourth Amendment of the United States Constitution. *See State v. Duvernoy*, 156 W. Va. 578, 582, 195 S.E.2d 631, 634 (1973) ("This Court has traditionally construed Article III, Section 6 in harmony with the Fourth Amendment."). Section 6 states that "[t]he rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated." W. Va. Const. Art. III, § 6.

Whether Article III of the West Virginia Constitution gives rise to a private cause of action for money damages is a point of dispute among the federal courts of this state. *See Harper v. Barbagallo*, No. 2:14-cv-07529, 2016 WL 5419442, at *12 (S.D. W. Va. Sept. 27, 2016) (discussing *Harrah v. Leverette*, 271 S.E.2d 322, 330 (W. Va. 1980)) (collecting cases). In particular, this Court has routinely held that claims for money damages are not available to remedy violations of Article III of the state constitution. *See Nutter v. Mellinger*, 2:19-cv-00787, 2020 WL 401790, at *6 (S.D. W. Va. Jan. 23, 2020); *Howard v. Ballard*, No. 2:13–cv–11006, 2015 WL 1481836, at *4 (S.D. W. Va. Mar. 31, 2015); *McMillion-Tolliver v. Kowalski*, No. 2:13-CV-29533, 2014 WL 1329790, at *2 (S.D.W. Va. Apr. 1, 2014); *Smoot v. Green*, No. 2:13–10148, 2013 WL 5918753, at *4–5 (S.D. W. Va. Nov. 1, 2013). The West Virginia Supreme Court of Appeals has never, to this Court's knowledge, addressed the issue directly.[4]

---

[4] The West Virginia Supreme Court has held that "[u]nless barred by [a recognized immunity], a private cause of action exists where a municipality or local government unit causes injury by denying that person rights that are protected by the Due Process Clause embodied within Article 3, § 10 of the West Virginia Constitution." *Hutchinson*, 479 S.E.2d at 654 (1996). However, the *Hutchison* court did not address whether its holding was limited to § 10 or, alternatively, applied to other rights enshrined in Article III.

Left without guidance from the West Virginia Legislature or the courts, this Court most recently certified this question as to Article III, § 6 to the West Virginia Supreme Court of Appeals for resolution in *Fields v. Mellinger*, 2:19-cv-00493 (S.D. W. Va. Mar. 3, 2020). The Court is awaiting a decision from the West Virginia Supreme Court of Appeals as to whether it will accept the question presented in *Fields*. **If Plaintiff intends to proceed with this claim, the Court will stay this action pending a final decision from the West Virginia Supreme Court of Appeals.** Plaintiff is **DIRECTED** to notify this Court in writing and within seven (7) days of this order whether she intends to pursue this claim or if she will dismiss it voluntarily to avoid a stay in this case.

    *2. Article III, Section 10*

Defendants argue that Article III, § 10 does not serve as an adequate vehicle for her excessive force claim. (ECF No. 9 at 7.) Defendants assert that, under United States Supreme Court precedent, all claims alleging that law enforcement officers used excessive force in the course of an arrest, investigatory stop, or seizure of a citizen should be analyzed under the reasonableness standard of the Fourth Amendment, rather than under substantive due process. (*Id.*) Because Plaintiff has alleged excessive force, and the protections of the West Virginia Constitution are coextensive with those under the United States Constitution, Defendants maintain that Plaintiff's due process claim must be dismissed. (*Id.* at 8.)

Plaintiff appears to have abandoned this claim as she has failed to address this argument in her response brief. *See Brevard v. Racing Corp. of West Virginia*, Civ. Action No. 2:19-cv-578, 2020 WL 1860713 at *8 (S.D. W. Va. Apr. 13, 2020); *Taylor v. Clay Cty. Sheriff's Dep't*, No. 2:19-cv-00387, 2020 WL 890247, at *2 (S.D. W. Va. Feb. 24, 2020) (finding the plaintiff

abandoned their claims because they failed to address the defendants' arguments); *Blankenship v. Necco, LLC*, No. 2:16-cv-12082, 2018 WL 3581092, at *9 (S.D. W. Va. July 25, 2018) ("The failure to respond to arguments raised in a motion . . . can indicate that the non-moving party concedes the point or abandons the claim."). Regardless, even if Plaintiff had responded, it would have been to no benefit.

Article III, Section 10 of the West Virginia Constitution states, "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." Section 10 mirrors the Fourteenth Amendment of the United States Constitution, and it protects against the deprivation of life, liberty, or property, without the due process of law. *See Nutter*, 2020 WL 401790 at *6. In West Virginia, "the protections afforded West Virginia citizens under the search and seizure provisions of our State Constitution are co-extensive with those provided for in the Fourth and Fourteenth Amendments to the United States Constitution." *State v. Clark*, 752 S.E.2d 907, 920–21 (W. Va. 2013).

The Supreme Court of the United States has stated that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or the Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). The Supreme Court further explained the issue:

> Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. . . . Today we . . . hold that all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.

> Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Graham v. Connor*, 490 U.S. 386, 395 (1989) (internal citations omitted). *See also Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 899 (4th Cir. 2016).

Here, Plaintiff has challenged the Defendant's use of force while effectuating an arrest. "[T]he rule stated in *Graham* and reinforced in *Lanier* applies to state constitutional claims as well; that is, the protections afforded by substantive due process are 'at best redundant' of those afforded by the more specific provisions of Article III, Section 6." *Cottrell on behalf of Estate of Cottrell v. Stepp*, Civ. Action No. 2:18-cv-01281, 2019 WL 1140198 at *3 (S.D. W. Va. Mar. 12, 2019). In light of the foregoing, Plaintiff's claim of excessive force cannot advance under a substantive due process theory and must therefore be analyzed under the more specific rubric of Article III, § 6. Therefore, Count I of Plaintiff's complaint is **DISMISSED WITH PREJUDICE** to the extent it relies on Article III, § 10 of the West Virginia Constitution.

### B. Negligent Hiring, Training, and Retention

Defendants next argue for the dismissal of Count II for three reasons. First, Defendants assert that Plaintiff has failed to plead sufficient factual allegations to support her claim of negligent hiring, training, and retention against the City. (ECF No. 9 at 9.) Next, Defendants argue that, even if Plaintiff has adequately plead her negligence claim against the City, the City is entitled to statutory immunity under W. Va. Code § 29-12A-5(a)(5). (*Id.*) Finally, Defendants argue that the City cannot be held liable for intentional acts committed by its employees under W. Va. Code § 29-12A-4(c)(2). (*Id.* at 11.)

Plaintiff responds by arguing that she has sufficiently pled a negligent hiring, training, and retention claim. (ECF No. 11 at 5.) She asserts that "discovery will show" that the process utilized by the City is "insufficient to eliminate the 'bad officers'" and that this showing will "strip[] the City of its immunity." (*Id.*) Plaintiff also asserts that the immunity afforded to political subdivisions under the West Virginia Governmental Tort Claims and Insurance Reform Act does not apply to constitutional violations. (*Id.* at 6.) Finally, Plaintiff argues that the Defendants are not entitled to qualified immunity. (*Id.*)

Whereas an employer can be held liable for the tortious acts of an employee under the doctrine of respondeat superior, a negligent hiring, training, and retention claim focuses on an employer's liability for hiring, supervising, or retaining an employee "whom the employer knew, or should have known, posed a risk to third parties." *Radford v. Hammons*, Civ. Action No. 2:14-24854, 2015 WL 738062 at *6–*7 (S.D. W. Va. Feb. 20, 2015). Similar to negligence torts more generally, the analysis focuses on "whether the employer was on notice of the employee's propensity (creating a duty), yet unreasonably failed to take action (manifesting a breach), resulting in harm to a third-party from the employee's tortious conduct." *Id.* at *7. *See also Woods v. Town of Danville, W.V.*, 712 F.Supp.2d 502, 514–15 (S.D. W. Va. 2010) (negligent supervision) ("Under West Virginia law, negligent supervision claims must rest upon a showing that [the Town of] Danville failed to properly supervise Jarrett and, as a result, Jarrett proximately caused injury to the plaintiffs." (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W.Va.2000)); *McCormick v. W. Va. Dep't of Public Safety*, 503 S.E.2d 502, 507 (W. Va. 1998) (per curiam) ("[W]hen the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee

was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?").

Plaintiff has failed to plead sufficient factual allegations to support a claim of negligent hiring, training, and retention. Plaintiff has not alleged any facts from which the Court can reasonably infer that the City was on notice of Osborne's propensity or how it unreasonably failed to take action, either through training or other disciplinary measures. *Cf. Rhodes v. King*, Civ. Action No. 2:19-cv-00626, 2020 WL 4607323 at *5 (S.D. W. Va. Aug. 11, 2020) (finding that plaintiff sufficiently plead claim when alleging three specific incidents of defendant's use of excessive force and a failure to act by county sheriff despite receiving complaints). Plaintiff has not plead sufficient factual information to even demonstrate a propensity for tortious conduct by Osborne. *See, e.g.*, *Myers v. City of Charleston*, 2:19-cv-00757, 2020 WL 4195005 at *14 (S.D. W. Va. July 21, 2020). As the Supreme Court has instructed, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Here, Plaintiff does not get to avail herself to discovery without providing more than conclusory allegations.

Regardless, even if Plaintiff had pled sufficient factual allegations to support her claim, the City would be entitled to statutory immunity under W. Va. Code § 29-12A-5(a)(5).[5] This provision of the West Virginia Governmental Tort Claims and Insurance Reform Act provides immunity to a political subdivision if the claim or loss results from "the method of providing police, law enforcement or fire protection[.]" There is no question that the challenged use of

---

[5] Plaintiff has apparently confused statutory immunity with qualified immunity. (*See* ECF No. 11 at 6.) Defendants did not raise a qualified immunity defense, and the Court therefore declines to consider this argument.

force here is grounded in the method of providing police and law enforcement. *See Albert v. City of Wheeling*, 792 S.E.2d 628, 633 (W. Va. 2016). Because the arrest is directly related to the method of providing police and law enforcement, the City is entitled to statutory immunity on this claim.[6]

Defendants have also argued that the City cannot be held vicariously liable for the intentional acts of its employees, and that despite asserting a claim of negligence, Plaintiff has in fact alleged an intentional act. (ECF No. 9 at 11.) Plaintiff has failed to respond to this argument, and therefore, it is deemed waived. *Brevard*, 2020 WL 1860713 at *8; *Taylor*, 2020 WL 890247 at *2; *Blankenship*, 2018 WL 3581092, at *9.

For the foregoing reasons, Count II of Plaintiff's complaint is **DISMISSED WITH PREJUDICE** as to both Defendants.

C. *Negligent/Intentional Infliction of Emotional Distress*

Defendants finally argue for the dismissal of Count III of the amended complaint because Plaintiff has only alleged intentional conduct and because Plaintiff's claim "does not meet the extremely narrow circumstances upon which a claim may be based under West Virginia law." (ECF No. 9 at 13–14.) Defendants also assert that Osborne is entitled to statutory immunity under W. Va. Code § 29-12A-5(b), which establishes that an employee can only be liable if his actions were "with malicious purpose, in bad faith, or in a wanton or reckless manner." (*Id.* at 13.)

---

[6] Plaintiff has also argued that W. Va. Code § 29-12A-18 operates to block statutory immunity on this claim because Plaintiff has asserted a constitutional violation. (ECF No. 11 at 6.) W. Va. Code § 29-12A-18(e) provides that the grant of statutory immunity shall not apply to "[c]ivil claims based upon alleged violations of the constitution . . . of the United States." This language is notably different than the remaining subsections, all of which state that statutory immunity is not applicable to various "civil *actions*." W. Va. Code §§ 29-12A-18(a)–(d) (emphasis added). Plaintiff has not asserted a constitutional claim under Count II and has explicitly stated that her claims are not brought pursuant to federal law. (ECF No. 5 at ¶ 23.) *See also S.R. v. Fayette Cnty. Bd. of Educ.*, Civ. Action No. 15-13466, 2016 WL 6886868 at *5 (S.D. W. Va. Nov. 21, 2016) (single reference to Fourteenth Amendment not sufficient to turn state common law claims into federal constitutional claim to strip statutory immunity).

Defendants assert, however, that in order to maintain a claim for NIED, Osborne's alleged conduct would have to be negligent, but because Plaintiff has only alleged intentional conduct, the allegations cannot support a claim for NIED. (*Id.*)

Plaintiff counters that not only has she sufficiently pled a claim for NIED, but has also sufficiently pled a claim for intentional infliction of emotional distress ("IIED"), otherwise known as the tort of outrage. (ECF No. 11 at 8.) Plaintiff argues that, at this stage, she has sufficiently pled every factor needed to set forth a claim for NIED as set forth by the Supreme Court of Appeals in *Heldreth v. Marrs*. (*Id.* (quoting *Heldreth v. Marrs*, 425 S.E.2d 157 (1992).)

In West Virginia, the tort of NIED "is premised upon the traditional negligence test of foreseeability." Syl. Pt. 2, *Heldreth v. Marrs*, 425 S.E.2d 157, 159 (W. Va. 1992). Thus, a defendant may be held liable for negligently inflicting emotional distress where the plaintiff "witnesses a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligent conduct, even though such distress did not result in physical injury, if the serious emotional distress was reasonably foreseeable." *Stump v. Ashland, Inc.*, 499 S.E.2d 41, 46 (W. Va. 1997) (quoting *Heldreth*, 425 S.E.2d at 159). To show whether a serious emotional injury was reasonably foreseeable to the defendant, a plaintiff must satisfy the following four factors:

> (1) whether the plaintiff was closely related to the injury victim; (2) whether the plaintiff was located at the scene of the accident and is aware that it is causing injury to the victim; (3) whether the victim is critically injured or killed; and (4) whether the plaintiff suffers serious emotional distress.

*Heldreth*, 425 S.E.2d at 159. The Supreme Court of Appeals has further stated that "[a]n individual may recover for the negligent infliction of emotional distress absent accompanying physical injury upon a showing of facts sufficient to guarantee that the emotional damages claim is

13

not spurious." Syl. Pt. 2, *Ricottilli v. Summersville Memorial Hosp.*, 425 S.E.2d 629, 630 (W. Va. 1992). *See also* Syl. Pt. 9, *Marlin v. Bill Rich Const., Inc.*, 482 S.E.2d 620, 623 (W. Va. 1996). "Serious emotional distress" is an emotional injury that is both severe and debilitating and may be found where an "ordinarily sensitive person" would be unable to cope adequately with the mental distress caused by a defendant's negligence. *Heldreth*, 425 S.E.2d at 165–66.

Here, the Court finds that Plaintiff has failed to sufficiently plead a claim for NIED because she has alleged an intentional tort, not a negligent act. While Plaintiff argues extensively on the alleged injuries she suffered, a key element of pleading NEID is a defendant's negligent conduct. *Stump*, 499 S.E.2d at 46 (liability may be found when an injury occurs "as a result of the defendant's *negligent conduct*") (emphasis added). It is well established that a plaintiff "[cannot] prevail on a claim of simple negligence based on [a defendant's] intentional act." *Smith v. Lusk*, 533 F. App'x 280, 284 (4th Cir. 2013) (citing *Stone v. Rudolph*, 32 S.E.2d 742, 748 (W. Va. 1944) (noting that "intentional acts are not encompassed by general negligence principles")); *Weigle v. Pifer*, 139 F.Supp.3d 760, 780 (S.D. W. Va. 2015) ("A mere allegation of negligence does not turn an intentional tort into negligent conduct.") (citations omitted). "Conduct that supports a negligence claim can be distinguished from conduct that supports an intentional tort claim by examining the subjective intent of the alleged tortfeasor." *Weigle*, 139 F.Supp.3d at 780; *Mandolidis v. Elkins Indus., Inc.*, 246 S.E.2d 907, 913–14 (W. Va. 1978) ("The law of this jurisdiction recognizes a distinction between negligence, including gross negligence, and wilful [*sic*], wanton, and reckless misconduct. The latter type of conduct requires a subjective realization of the risk of bodily injury created by the activity and as such does not constitute any form of negligence.") (superseded by statute on other grounds).

Here, Plaintiff has alleged that Osborne used excessive force while making an arrest. As this Court recently stated, an arrest is the seizure of a person, which is, logically and necessarily, an intentional act. *See Rhodes*, 2020 WL 4607323 at *4 (S.D. W. Va. Aug. 11, 2020) (citing *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, . . . but the detention or taking itself must be willful.") Simply, the Plaintiff's allegations of negligence, (*see* ECF No. 5 at ¶¶ 42, 46), cannot turn intentional acts into ones of negligence. *Rhodes*, 2020 WL 4607323 at *4; *Weigle*, 139 F.Supp.3d at 780. *See also Criss v. Criss*, 356 S.E.2d 620 (W. Va. 1987) (recognizing a distinction between "an intentional tort" and "a negligent tort").

Finally, the Court disagrees with Plaintiff that she has also sufficiently pled a claim for IIED. Providing fair notice of a claim to a defendant requires more than a "formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555. A plaintiff may prevail on a claim for IIED if she can establish the following four elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Laboratories, Inc.*, 504 S.E.2d 419 (1998). "Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." *O'Dell v. Stegall*, 703 S.E.2d 561, 594 (W. Va. 2010); Syl. Pt. 4, *Travis*, 504 S.E.2d at 421. "Outrageous" requires a showing that the conduct is "more than

unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." *Travis*, 504 S.E.2d at 425. "In fact, 'it is not enough that the defendant acted with a tortious intent' or even that 'the defendant's conduct could be characterized as malicious.'" *Insco v. Wexford Health Sources, Inc.*, Civ. Action No. 2:19-cv-00612, 2020WL 2770419 at *9 (S.D. W. Va. May 28, 2020). The alleged conduct must be "so outrageous in character, and so extreme in degree, as to go *beyond all possible bounds of decency*, and to be regarded as *atrocious* and *utterly intolerable* in a civilized society." *Keyes v. Keyes*, 392 S.E.2d 693, 696 (W. Va. 1990) (emphasis in original).

Upon careful consideration, the Court concludes that Plaintiff has failed to plead this high standard. The Court feels compelled to note at the outset of this piece of the analysis that Plaintiff is represented by seasoned counsel, and that under Count III, Plaintiff has repeatedly alleged that Defendant Osborne's conduct was "negligent." (See ECF No. 5 at ¶ 42, 46). In fact, Count III is even titled "Negligent Infliction of Emotional Distress." However, Count III also contains a mashup of several different standards, including those of a claim for IIED. (*See, e.g.*, *id.* at ¶ 43.) Such an amalgamation of labels and elements cannot satisfy the pleading standards of Rule 8, *Twombly*, and *Iqbal*, as the Defendants here could not be said to be put on fair notice of the claim.[7] As has already been established in this case and elsewhere, "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Still, the Court also notes that in addition to these considerations, the allegations set forth by Plaintiff do not satisfy the standards for pleading a claim of IIED. Plaintiff alleges that

---

[7] In fact, the Court notes that Defendants did not include any argument for the dismissal of an IIED claim in the original motion. (ECF Nos. 8, 9.) Plaintiff did not raise IIED until she filed her response brief. (ECF No. 11 at 9.) The Court further notes that Plaintiff's original complaint did not include a claim for either IIED or NIED. (ECF No. 1–5.)

Defendant Osborne was executing an arrest warrant for the Plaintiff, at which point her friend "interrupted the altercation." (ECF No. 5 at ¶¶ 9–10.) At that time, Osborne allegedly "slam[ed]" Plaintiff to the ground and completed the arrest. (*Id.* at ¶¶ 11, 14.) Police officers are authorized to use force when arresting a suspect. *See Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also State ex rel. Mullins v. McClung*, 17 S.E.2d 621, 624 (W. Va. 1941). Plaintiff herself has alleged that there was resistance to Osborne in making the arrest, and that Osborne responded by using force to make the arrest. *See State v. Weisengoff*, 101 S.E. 450, 455–56 (W. Va. 1919) ("Resistance of the sheriff's lawful arrest was unlawful . . . when he refused to submit, it was the officer's right to continue his efforts, using such reasonable force as was necessary to subdue and overcome the [arrestee's] efforts to escape."). While there may be a question to the reasonableness of the force used, the Court concludes, as a matter of law, that the force alleged here was not "so outrageous in character, and so extreme in degree, as to go *beyond all possible bounds of decency*, and to be regarded as *atrocious* and *utterly intolerable* in a civilized society." *Keyes*, 392 S.E.2d at 696 (emphasis in original).

For the foregoing reasons, Count III of Plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, (ECF No. 8), is **GRANTED IN PART** and **DENIED IN PART**. The Court hereby **DIRECTS** Plaintiff to notify this Court in writing and within seven (7) days of this order whether she intends to pursue her claim under Article III, § 6 of the West Virginia Constitution, at which point the Court will stay this case pending the resolution of the certified question before the West Virginia Supreme Court of

Appeals in *Fields v. Mellinger*, 2:19-cv-00493 (S.D. W. Va. Mar. 3, 2020). Plaintiff's remaining claims are hereby **DISMISSED WITH PREJUDICE**.

    **IT IS SO ORDERED**.

    The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

    ENTER:    October 26, 2020

THOMAS E. JOHNSTON, CHIEF JUDGE